IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DEBRA G. BRUNETTE, )
 )
 Plaintiff, )
 )
v. ) Case No. CIV-08-410-KEW
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
 Defendant. )

## OPINION AND ORDER

Plaintiff Debra G. Brunette (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 27, 1958 and was 50 years old at the time of the ALJ's decision. She completed her education through the twelfth grade. Claimant has engaged in past relevant work as a meter reader. Claimant alleges an inability to work beginning February 9, 2004 due to back pain, joint and muscle pain,

3

adrenal disease, and thyroid disease.

## Procedural History

On February 24, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*). Claimant's applications for benefits were denied initially and upon reconsideration. On June 6, 2008, Claimant appeared at a hearing before ALJ Lantz McClain in Sallisaw, Oklahoma. By decision dated August 25, 2008, the ALJ found Claimant was not disabled at any time through the date of the decision. On September 18, 2008, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform her past relevant work as a meter reader.

## Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in (1) substituting his own medical opinion for that of Claimant's treating physicians and for failing to properly evaluate Claimant's

4

chronic fatigue syndrome ("CFS"); and (2) engaging in a faulty analysis at step two of the sequential evaluation.

**Consideration of Medical Evidence**

Claimant first contends the ALJ substituted his own opinion as to her CFS condition rather than considering the opinions of Claimant's treating physicians. Specifically, Claimant was attended by Dr. Laura Bilbruck on January 21, 2005, reporting that she felt exhausted after slight effort, experienced difficulty staying asleep, awakened unrefreshed, had impaired short term memory and concentration. (Tr. 376). Dr. Bilbruck diagnosed Claimant with CFS and prescribed Xanax, Provigil, Ambien, and Cymbalta. (Tr. 377). Dr. Bilbruck also authored a letter reflecting her diagnosis of CFS with the statement, "she is currently unable to preform (sic) her job as a meter reader. I do not believe this is a permanent condition but it may be long term. [Claimant] shows every sign of wanting to be well and work, I do not believe there is any secondary gain involved." (Tr. 378).

Additionally, Claimant saw Dr. Michael J. Irvin on January 10, 2008. He diagnosed Claimant with CFS, adrenal insufficiency, immune dysfunction syndrome, Eptein-Barr, hypothyroidism, candidiasis, adhesive capsulitis, and a herniated disk in her lower back. Dr. Irvin determined Claimant was experiencing the

conditions of extreme fatigue, extremely low stamina, short term memory and concentration problems, muscle and joint pain, social anxiety, shoulder pain with limited movement, non-refreshing sleep and an inability to sit, stand, or bend for extended periods of time without extreme back pain. Dr. Irvin concluded "[i]n my professional opinion, due to [Claimant's] medical conditions she is disabled and will not be able to seek gainful employment." (Tr. 374).

Prior medical evidence also indicated these same symptoms. On February 9, 2004, Claimant saw Dr. V. John Gonino, complaining of muscle pain and an inability to concentrate. (Tr. 239-40). Claimant also tested positive for the antigen demonstrating she suffered from the Epstein-Barr virus during this same period. (Tr. 235).

Claimant also reported muscle pain and spasms, a lack of energy, and fatigue in March, April, May, and June visits with Dr. Gonino. (Tr. 243-250). In a July 26, 2004 visit, Claimant reported her stamina lasted about 30 minutes. (Tr. 251). On August 23, 2004, Claimant stated she walked for about 30 minutes and was "stove up with muscle pain for 3 days." (Tr. 242).

On January 12, 2005, Claimant reported a lack of stamina such that she could not complete her housework. (Tr. 253). On June 28,

6

2005, Dr. Gonino diagnosed Claimant with CFS, noting her lack of energy. (Tr. 236-237).

Claimant's records were reviewed by an agency physician, Dr. Gordon B. Strom, Jr. He noted Claimant had undergone "very unconventional therapy for chronic fatigue." He recognized the various diagnoses of CFS as well as degenerative disk disease involving the LS spine, by history, hypothyroidism, adrenal dysfunction, and chronic back pain. (Tr. 257-259).

On October 19, 2006, Claimant was treated at the Texas Institute of Functional Medicines for her conditions including CFS. (Tr. 302).

In his decision, the ALJ noted Dr. Bilbruck's letter of January 21, 2005 concerning Claimant's CFS condition and her ability to perform her job as well as Dr. Irvin's opinion. He found they were "given a substantially diminished weight" because the ALJ concluded "[a]s to the claimant's chronic fatigue syndrome or fibromyalgia, the objective medical evidence shows conclusively that neither of these alleged impairments meets the criteria specified in SSR 99-2p. There is no other objective medical evidence to support the claims of these conditions; accordingly, these alleged conditions cannot be recognized as impairments. The claimant's credibility is diminished due to these inconsistencies."

(Tr. 16).

Soc. Sec. R. 99-2p states that CFS will be a medically determinable impairment when it causes a person "prolonged fatigue that lasts 6 months or more and that results in substantial reduction in previous levels of occupational, educational, social, or personal activities." The fatigue must be of "new or definite onset (i.e., has not be lifelong), cannot be explained by another physical or mental disorder, is not the result of ongoing exertion, is not substantially alleviated by rest, and results in substantial reduction in previous levels of occupational, educational, social, or personal activities." Additionally, the concurrence of 4 or more of the following symptoms must have occurred within 6 or more consecutive months and not pre-dated the fatigue:

(1) Self-reported impairment in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities;

(2) Sore throat;

(3) Tender cervical or axillary lymph nodes;

(4) Muscle pain;

(5) Multi-joint pain without joint swelling or redness;

(6) Headaches of a new type, pattern, or severity;

(7) Unrefreshing sleep; and

(8) Postexertional malaise lasting more than 24 hours.

8

Soc. Sec. R. 99-2p.

Under the regulation, the diagnosis of CFS can be made based on an individual's reported symptoms alone once other possible causes have been ruled out. However, there must be medical signs or laboratory findings before the existence of a medically determinable impairment, including the existence of an elevated antibody titer to Epstein-Barr virus. Id.

The ALJ failed to engage in the required analysis of Claimant's CFS symptoms and the diagnoses of multiple treating physicians. Indeed, the ALJ seems to have ignored or rejected out of hand these physicians' opinions. For that matter, this Court is unsure of the precise "objective medical evidence" that "conclusively" shows Claimant did not suffer from CFS because he does not reference that evidence in his decision. Clearly, an ALJ cannot substitute his own medical opinion for that of a claimant's treating physician. Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996). Moreover, although not specifically argued by Claimant, it does not appear the ALJ engaged in the proper analysis for giving Claimant's treating physicians' opinions reduced or no weight. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). (quotation omitted). On remand, the ALJ shall remedy these deficiencies.

### RFC Determination

Claimant also challenges the ALJ's RFC conclusions at step two. Given the failings of the ALJ's analysis with regard to Claimant's CFS condition as an impairment, the RFC evaluation must be re-examined on remand to determine whether any alterations in the ALJ's decision on Claimant's impairments will affect her RFC.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 19th day of January, 2010.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE